IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Marvin G., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 20-cv-50362 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Kilolo Kijakazi, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Marvin G., seeks review of the final decision of the Commissioner of the Social Security Administration denying his disability benefits. The parties have filed cross motions for summary judgment [17], [24]. For the reasons set forth below, Plaintiff's motion for summary judgment [17] is denied and the Commissioner's motion for summary judgment [24], is granted. The final decision of the Commissioner denying benefits is affirmed.

**BACKGROUND**

**A. Procedural History**

On October 31, 2017, Marvin G. ("Plaintiff") filed for disability insurance benefits. On April 6, 2018, the Social Security Administration ("Commissioner") denied his application, and upon reconsideration on August 9, 2016. R. 13. Plaintiff filed a written request for a hearing on September 26, 2018. *Id*. On August 12, 2019, a hearing was held by Administrative Law Judge ("ALJ") Kevin Vodak where Plaintiff appeared virtually and testified. Plaintiff was represented by counsel. *Id*. Craig Johnston, an impartial vocational expert ("VE"), also appeared and testified. *Id*.

On September 23, 2019, the ALJ issued his written opinion denying Plaintiff's claims for disability, disability insurance benefits, and supplemental security income. R. 13-25. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [8]. Now before the Court are Plaintiff's motion for summary judgment [17], the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [24], and Plaintiff's reply brief [28].

---

[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

1

### B. The ALJ's Decision

In his ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since the amended alleged onset date of June 23, 2017. R. 15. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease in the lumbar spine; degenerative joint disease in the bilateral hips; hypertension; and morbid obesity. R. 16. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id*.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work but with the following limitations: the claimant can stand/walk 4 hours in an 8-hour workday and needs to alternate from standing/walking every 30 minutes to sit for 2-3 minutes; frequently handle and finger with the left hand; occasionally push/pull with the right lower extremity; occasionally climb ramps/stairs; occasionally balance, stop, knell, crouch, and crawl; never climb ladders/ropes/scaffolds; never work at unprotected heights or around moving, mechanical parts; and no exposure to uneven/slippery ground. R. 17. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 23. Finally, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including cashier (DOT# 211.462-010), parts inspector/sorter (DOT# 669.687-014), and parts assembler (DOT# 713.687-018). R. 24. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from June 23, 2017, through the date of decision, September 23, 2019. R. 25.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment

with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citations and quotations omitted). *See also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff contests the ALJ's decision as being unsupported by substantial evidence, as well as containing errors of law. [17], p. 1. Specifically, Plaintiff argues that the RFC was not supported by the record; Plaintiff's obesity was inadequately addressed; Plaintiff's hand limitations were improperly addressed in the RFC; the ALJ's subjective symptom discussion was insufficient; the ALJ inadequately discussed Dr. Nowak's opinions; and that Plaintiff uses a prescribed cane, which should have been included in the RFC. [17], p. 1-15. Each argument will be taken in turn.

### A. RFC Analysis

Plaintiff argues that the RFC is unsupported by the record for several reasons. Plaintiff primarily challenges the RFC by arguing that the limitations provided in it are actually consistent with the "sedentary" exertional level rather than the light exertional level established by the ALJ, and that a sedentary RFC would cause Gentry to be "[f]ound disabled as of his 50th birthday" because of the Grid rules. [17], p. 6. In support of his argument that the RFC's limitations forcibly reduce the exertional level to sedentary, Plaintiff cites to SSR 83-12, which gives guidance on how to address a mixed exertional level. [17], p. 6-7. Plaintiff characterizes this SSR as stating that "[i]f the ALJ concludes that the claimant has a significantly reduced capacity for the higher level of exertion then the lower level of exertion is used." [17], p. 7. Plaintiff goes on to argue that it is "[o]bvious that the RFC provided by the ALJ results in a "significantly reduced capacity" to perform light work which instead necessitates defining it as sedentary." *Id.* Plaintiff argues that the four-hour standing limitation in the RFC forcibly reduces the exertional level to sedentary because the limitation results in a significantly reduced capacity for light work, all of which would ultimately require Plaintiff to be found disabled at the sedentary level because he is over 50 years old.

Plaintiff's arguments rest on the allegation that light work cannot encompass a four-hour standing limitation. Yet, the Social Security Administration's ("SSA") definition of light work does not include such a rigid standing expectation; instead, light work only "requires a good deal of walking or standing" for "*most* light jobs."[2] SSR 83-10 (emphasis added). The Commissioner construes this definition to mean that the ALJ's RFC here "merely precluded a finding that he

---

[2] Plaintiff cites to SSR 83-14 in support of his contention that the four-hour standing limitation cannot be within the scope of light work. [17], p. 7. SSR 83-14 provides guidance on situations of mixed exertional levels and characterizes the difference between sedentary and light work as "*most* light jobs… requir[ing] a person to be standing… most of the workday." SSR 83-14 (emphasis added). Plaintiff's argument again falls short; even the guidance on mixed exertional levels is careful to say "most" light jobs require standing most of the workday, again suggesting that more limited standing can nonetheless be consistent with *some* light jobs (just not *all*).

3

[Plaintiff] could perform the *full range* of light occupations" rather than precluded a finding that Plaintiff could perform *any* light occupations. [24], p. 10.

The Court agrees with the Commissioner. Given that light work only requires a "good deal" of standing for *most* (not all) light jobs, the standing limitation in the RFC falls within the definition of light work.[3] Even if the four-hour limitation cannot arguably constitute a "good deal" of standing (defined as "*[a]pproximately* 6 hours of an 8 hour workday") which would enable Plaintiff to perform the *full* range of light jobs, the limitation ultimately does not eliminate the possibility of *all* light work and is consequently within the bounds of the light work exertional level as described by the SSA. SSR 83-10(2) (emphasis added).

Plaintiff further argues that the ALJ erred in erroneously citing two additional DOT occupations (dowel inspector, DOT# 669.687-014 and final assembler, DOT# 713.687-018) that carry a "sedentary" exertional level, which conflict with the "light work" exertional level provided in the RFC. [17], p. 8. The ALJ included these jobs in his analysis based on the VE's hearing testimony. *See* R. 63. Based on questioning from the ALJ as to further limitations placed on light work occupations, the VE misrepresented the exertional level of these occupations. R. 63. Nevertheless, the ALJ was "[e]ntitled to rely on unchallenged VE testimony" and must only "[i]nvestigate and resolve" a conflict between the VE's testimony and the DOT if it is "apparent," meaning a conflict "[s]o obvious that the ALJ should have picked up on [it] without any assistance." *Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008); *Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011) (citing *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008)). At the hearing, the ALJ asked the VE whether his testimony was consistent with the DOT, and the VE affirmed that it was without any challenge by Plaintiff. R. 62. Plaintiff now challenges the testimony on appeal, arguing that the VE's testimony presented such an "[o]bvious conflict [that] a search under each DOT shows the jobs is [*sic*] classified as sedentary." [17], p. 8.

Plaintiff's argument is unpersuasive. Conflicts must be "[o]bvious enough that the ALJ should have picked up on them without any assistance" for the duty to investigate conflicts to be triggered. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). That is not the case here; in contrast, Plaintiff's argument demonstrates that the conflict between the actual exertional level of the occupations (sedentary) and the exertional level at issue during the hearing (light) was not apparent, and the ALJ fulfilled his responsibility by inquiring into the consistency of the VE's

---

[3] Because the Court finds that the four-hour limitation falls within the definition of light work, it need not take up Plaintiff's arguments regarding mixed exertional levels or arguments that construe the ALJ's RFC as reaching a sedentary exertional level rather than the ALJ's stated light. This includes Plaintiff's undeveloped argument under *Allensworth v. Colvin*, which again rests on a characterization of the RFC as being sedentary and consequently inconsistent with agency recommendations. [17], p. 8-9 (citing *Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016) and asserting that the ALJ's standing limitation was inconsistent with the agency's light work finding). Further, "[p]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)).

testimony and then relying on that unchallenged affirmation of consistency. Moreover, any error that results from this erroneous inclusion of sedentary occupations is harmless because, as explained below, the additional occupation provided (cashier, DOT# 211.462-010) is a light occupation with sufficient numbers to be significant in the national economy.

Plaintiff argues next that the VE's suggested occupation of cashier, with 57,000 jobs nationally, should not be considered a significant number of jobs in the national economy. [17], p. 8. The Commissioner refutes this argument by citing to several cases within this district that have found lower job numbers significant. [24], p. 13 (citing *Joseph M. v. Saul,* 2019 WL 6918281 at \*17 (N.D. Ill. Dec. 19, 2019) (finding 40,000 national jobs significant) and *Dorothy V. v. Berryhill,* 2019 WL 2325998, at \*7 (N.D. Ill. 2019) (finding 17,700 national jobs significant)).

Although the Seventh Circuit's "[c]ase law does not provide a clear baseline for how many jobs are needed" to be considered significant for SSA purposes, "[a]s few as 174 jobs has been held to be significant" and "[i]t appears well-established that 1,000 jobs is a significant number." *Milhem v. Kijakazi,* 52 F.4th 688, 694, 696 (7th Cir. 2022); *Liskowitz v. Astrue,* 559 F.3d 736, 743 (7th Cir. 2009). Because there is no bright-line number that constitutes de facto significance, "[t]he ALJ is granted discretion to determine what constitutes a "significant" number of jobs on a case-by-case basis." *Milhem,* 52 F.4th 688 at 696. The ALJ need only "assess whether [the] evidence establishes more than [i]solated jobs that exist only in very limited numbers in relatively few locations." *Id* at 694 (citing 20 C.F.R. §§ 404.1566(b), 416.966(b) (internal quotation marks omitted)).

As in *Milhem*, the ALJ here "[g]rounded [his] conclusion that the number of jobs mentioned was significant on [his] consideration of [Plaintiff's] age, education, work experience, and residual functional capacity" as well as the testimony of the VE. *Milhelm* at 696 (internal quotation marks omitted); R. 24-25. The ALJ asked the VE a series of hypothetical questions with increasing functional limitations, to which the VE adjusted the viable jobs accordingly. R. 61-65. When the ALJ inquired as to the jobs available for an individual with a sit/stand limitation as well as a four-hour standing limitation (the limitations actually included in the ALJ's final RFC for Plaintiff), the VE reiterated that, "[b]ased on having spoken with employers, having seen the jobs actually performed," the cashier job remained viable and had 57,000 jobs in the national economy with the additional limitations. R. 63-64. The VE further testified that "[a]bout one in ten cashiers… are seated by a sit/stand option were [*sic*] they can choose either one." R. 63. Because the ALJ "[i]s entitled to rely on unchallenged VE testimony," the ALJ's determination that the cashier job had a significant number of jobs in the national economy based in part on the VE's testimony was supported by substantial evidence. *Zblewski v. Astrue,* 302 F. App'x 488, 494 (7th Cir. 2008). The RFC is thus supported by substantial evidence.

### B. Plaintiff's Obesity

Plaintiff argues that the ALJ inadequately addressed Plaintiff's obesity in his opinion. Plaintiff cites to SSR 19-2p and contends that the ALJ did not adequately consider the fact that "the effects of obesity combined with other impairments can be greater than the effects of each of the impairments considered separately." [17], p. 9 (quoting SSR 19-2p). Plaintiff ultimately

suggests that "[t]he ALJ's decision should be reversed because obesity and how it impacts Gentry's other severe impairments is not discussed." [17], p. 10.

Although Plaintiff criticizes the ALJ's opinion for not considering Plaintiff's "obesity and how it impacts Gentry's other severe impairments," Plaintiff does the same and does not explain how his obesity impacts his other severe impairments.[4] Plaintiff does not point to medical evidence of record, or even hearing testimony, that articulates how Plaintiff's obesity exacerbates some of his other medical conditions such that his ability to work is impacted. Because "an ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how [the applicant's] obesity hampers [the applicant's] ability to work," any lack of consideration on the ALJ's part is excused by Plaintiff's own lack of evidence demonstrating the impact of obesity on other impairments and his ability to work. *Stepp v. Colvin*, 795 F. 3d 711, 720 (7th Cir. 2015); *see also Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at *13 (N.D. Ill. Dec. 19, 2019) ("A claimant must explain how his obesity affected his ability to work before an ALJ's failure to adequately discuss obesity will require remand.").

Moreover, the ALJ *did* explicitly consider the issue of obesity, explaining that, "[b]ased on the medical evidence of record, I find that the claimant's obesity does not elevate the claimant's other medically determinable impairments to meet a listing." R. 17. In reaching this conclusion, the ALJ reviewed the opinions of the agency doctors and the Plaintiff's personal physician, Dr. Nowak. R. 22-23. While the agency doctors did consider the impact of Plaintiff's obesity when crafting their recommendation, Dr. Nowak did not, suggesting that even Plaintiff's personal doctor did not consider Plaintiff's obesity a significant enough issue to warrant evaluating its impact on his ability to work. R. 22-23; R. 73; R. 87; R. 100; R. 407-410. Ultimately, in reviewing these opinions, the ALJ "[i]ndirectly factors obesity into the opinion by [a]dopting the limitations suggested by the specialists and reviewing doctors, who were aware of claimant's obesity." [24], p. 5 (quoting *Skarbek v. Barnhart*, 930 F.3d 500, 504 (7th Cir. 2004) (internal quotations omitted)). Consequently, the ALJ adequately considered obesity in the opinion.

## C. Plaintiff's Hand Limitations

Plaintiff puts forth another argument about improper RFC limitations, this time challenging the lack of a "grasping" limitation. [17], p. 11-12. Though the ALJ did provide a handling and fingering limitation in the RFC, Plaintiff alleges that the "[h]andling and fingering limitation does not address Gentry's limitations with grasping things." [17], p. 11. Yet, SSA guidance describes "handling" as encompassing "[s]eizing, holding, *grasping*, turning or otherwise working primarily with the whole hand or hands." SSR 85-15(2)(c) (emphasis added). Accordingly, the RFC did put forth a limitation that addresses grasping by including a handling limitation. As a result, the ALJ did properly address Plaintiff's hand limitations by affirmatively including them in the RFC.

---

[4] Plaintiff piggybacks on the obesity argument with a challenge to the ALJ's characterization of his hypertension issues. [17], p. 10-11. It is unclear if Plaintiff is attempting to argue that his obesity exacerbates his hypertension, which is a severe impairment; he primarily appears to take issue with the ALJ's description of his hypertension as having improved with medications and weight loss. [17], p. 10. Even if Plaintiff is arguing that his obesity exacerbates his hypertension, the ALJ is correct that the medical evidence demonstrates controlled hypertension with medication, which ultimately undercuts any possible exacerbation arguments Plaintiff may have attempted. R. 21; R. 714 (Dr. Nowak finding that "HTN [hypertension] controlled. Will stop amlodipine…Continue other BP medications").

### D. Subjective Symptom Discussion

Plaintiff argues that the ALJ's subjective symptom discussion is insufficient because it misconstrues pain management evidence, omits citations to the record related to physical therapy and pain management, and is missing physical therapy records altogether, the latter of which Plaintiff construes as an error of investigation on the ALJ's part. [17], p. 12-14. Plaintiff argues that his pain management records indicate that his pain is getting worse, not better as asserted by the ALJ. [17], p. 12-13. As to the missing citations, Plaintiff takes issue specifically with the ALJ's pain management discussion, as well as his physical therapy discussion, as making "[m]any statements about Gentry's subjective symptoms with no citation to the evidence, such that it is unclear." [17], p. 13. Plaintiff construes these unclear and uncited statements as requiring remand. *Id.* (citing *Zurawksi v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)).

The Commissioner argues that the ALJ's subjective symptom discussion was sufficient because the pain management evidence does demonstrate improvement with continued treatment, and because the ALJ "[p]rovided citations earlier in the decision as he discussed the relevant evidence undergirding his conclusions." [24], p. 18. The Commissioner further points out that "[t]he ALJ need not repeat an analysis or citations with each issue." *Id* (citing *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("An ALJ need not rehash every detail each time he states conclusions on various subjects.")). The Commissioner also construes *Zurawski* differently than Plaintiff, asserting that it merely stands for the proposition that "[t]he ALJ's analysis must be supported by evidence in the case record." *Id* (quoting *Zurawski* at 887). Finally, the Commissioner argues that the missing physical therapy records do not reflect an error on the ALJ's part because the ALJ satisfied his duty by asking Plaintiff's counsel if the record was complete at the hearing, and Plaintiff's counsel represented that it was. [24], p. 17.

The Court agrees with the Commissioner. "[T]he ALJ's credibility determinations generally will not be overturned unless they were patently wrong," and Plaintiff did not make such a showing. *Zurawski* at 887 (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)). As to the allegedly missing physical therapy records, during the hearing the ALJ specifically asked Plaintiff's counsel about the completeness of the record, and Plaintiff's counsel affirmatively stated that the record was complete.[5] R. 34. The ALJ relied on this representation by Plaintiff's counsel and, in the course of his subjective symptom analysis, inferred that the lack of physical therapy records suggested that Plaintiff had not recently participated in physical therapy and was thus evidently "slow to comply" with physical therapy referrals made over a year prior. R. 21. The ALJ was entitled to rely on the representation made by Plaintiff's counsel that the record was complete because, "[w]hen a claimant has counsel at the agency level, he is presumed to have put forth his best case" and is not entitled to blame the ALJ for purportedly missing records. *Equitz v. Kijakazi*, No. 21-2563, 2023 WL 4636446, at *2 (7th Cir. July 20, 2023). Consequently, the missing physical therapy records do not constitute an error on the ALJ's part.

---

[5] See 20 C.F.R. § 404.1512(a) (asserting that it is Plaintiff's responsibility to "submit all evidence known to you that relates to whether or not you are… disabled"); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) (Plaintiff "[b]ears the burden of producing medical evidence that supports her claims of disability."); R. 412 (SSA medical request form for Rockford Health Physicians specifically asking for copies of physical therapy records to evaluate Plaintiff's claim).

7

Furthermore, the ALJ's subjective symptom analysis related to physical therapy and the citations in the analysis are sufficient. Plaintiff raises a limited argument specific to the ALJ's analysis of Plaintiff as "slow to comply" with physical therapy by taking issue with the ALJ's lack of citation for said slow compliance. [17], p. 12. As the Commissioner pointed out, the ALJ did support his analysis with citations to relevant parts of the record discussing physical therapy orders earlier in the RFC discussion. *See* R. 19 (citing R. 722); R. 20 (citing R. 710). Although the ALJ did not give weight to Plaintiff's testimony at the hearing that he went to physical therapy "[t]wice a week for three months," the only record that substantiates this testimony is a Rockford Orthopedic form from 2013 in which Plaintiff reported engaging in physical therapy "2-3 x per week for 4-6 weeks." R. 347. This form predates Plaintiff's amended onset date of June 2017 by four years and thus suggests that Plaintiff's physical therapy testimony is outdated and irrelevant. What is still timely and relevant are the numerous places in the record during the disability onset period where Plaintiff was prescribed physical therapy as a course of treatment and the lack of corresponding records relaying compliance with that prescription. *See* R. 429, 649 (noting that "[p]atient has failed conservative treatment measures including 6 weeks of PT"), 658, 722, 749. Based on the repeated physical therapy prescriptions and the lack of any physical therapy records whatsoever, the ALJ's analysis of Plaintiff as "slow to comply" with physical therapy is supported by substantial evidence.

Relatedly, the ALJ's subjective symptom analysis related to pain management and the record citations are also sufficient for the reasons established in the preceding physical therapy discussion. The ALJ evaluated Plaintiff's subjective medical evidence and concluded that when Plaintiff complied with recommendations, his pain was improved. R. 21. Plaintiff again challenges this analysis as being insufficient due to a lack of citations placed directly after the ALJ's analysis. [17], p. 12-13. As with the physical therapy discussion, the ALJ provided citations to the relevant medical evidence for pain management earlier in the RFC. R. 20-21 (citing R. 43, 667, 713). "To require the ALJ to repeat such a discussion throughout his decision would be redundant." *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015).

Finally, the ALJ's subjective symptom analysis related to pain management itself is sufficient because the record (cited earlier in the ALJ's RFC discussion) supports his conclusion that Plaintiff's pain improved with treatment. R. 21. The ALJ considered Plaintiff's pain management records and pointed out that Plaintiff's pain was reduced by 80% for two weeks with the use of injections such as a medial branch nerve block. R. 21 (citing 677, 713). The ALJ also pointed out that Plaintiff reported to a medical provider that "physical therapy (hot showers)" improved his pain.[6] R. 21 (referencing R. 641). Plaintiff attempts to construe his referral to a neurosurgeon as demonstrating worsening pain, but that conflicts with the record wherein Dr. Nowak wrote that a neurosurgeon referral is needed simply for longer-term pain relief because "[l]umbar injections don't help for a long period of time." [17], p. 13; R. 714. The ALJ also pointed

---

[6] Plaintiff erroneously construes this citation as entirely missing from the ALJ's decision. [17], p. 12. Again, the ALJ reviewed and cited the medical visit in which Plaintiff reported that "physical therapy (hot showers)" improved his pain earlier in the RFC discussion. R. 20 (citing R. 641). Although it is true that the ALJ did not *explicitly* quote this language at the point in the decision where he provided the cite for the medical visit at issue, any error that may follow from that is harmless because an explicit quotation would only have served to bolster the ALJ's reference, not undermine it.

8

out that Dr. Nowak reported that Plaintiff's opportunity to be seen by a neurosurgeon[7] rested on his compliance with physical therapy. R. 21; R. 20 (citing R. 709, 711). Based on evidence of Plaintiff's successful short-term pain relief with injections, and evidence of his "slow compliance" with the physical therapy required to access longer-term pain relief from a neurosurgeon, the ALJ's conclusion that Plaintiff's pain management was improved and could continue to improve with further treatment compliance (such as continued injections or physical therapy to reach a neurosurgeon) was supported by substantial evidence. R. 21.

### E. Dr. Nowak's Opinion

Plaintiff also presents a limited challenge to the ALJ's consideration of Dr. Nowak's opinion. [17], p. 14-15. Plaintiff quotes outdated language from prior regulation 20 C.F.R. § 1527(c)(2) and argues that Dr. Nowak's opinion should be "[a]fforded more weight." [17], p. 14. This regulation is inapplicable as Plaintiff's claim was filed after March 27, 2017, meaning that 20 C.F.R. § 404.1520c is the applicable regulation to evaluate medical opinions. Plaintiff does acknowledge the appropriate regulation, asserting generally that "[i]n affording Dr. Nowak's opinions partial weight, the factors to address in 20 C.F.R. § 404.1520(c) [sic] are not discussed." [17], p. 14. Plaintiff offers no argument or evidence as to how the ALJ neglected to evaluate Dr. Nowak's supportability and consistency as required by 20 C.F.R. § 404.1520c(b)(2). Because "[p]erfunctory and undeveloped arguments… are waived," the Court need not consider whether the ALJ complied with the requirements of 20 C.F.R. § 404.1520c(b)(2). *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). Accordingly, the Court also need not consider the Plaintiff's single-sentence assertion that the ALJ cherry-picked Dr. Nowak's opinion; Plaintiff again did not provide any evidence nor argument as to what exactly was cherry-picked and thus waives his undeveloped argument on the subject.

### F. Cane in the RFC

Finally, Plaintiff challenges the omission of a cane limitation in the RFC. The ALJ evaluated the cane evidence in the record and concluded that although Plaintiff clearly purchased a cane in September 2018, it was not clear that he was "using the cane to ambulate *at the treatment visits*," rendering the cane an unneeded limitation in the RFC. R. 20, 21 (emphasis added). The Commissioner argues that this conclusion is supported by the record evidence because Dr. Nowak only recorded Plaintiff's *report* of cane use, rather than recorded an *observation* of cane use, making a cane limitation unnecessary. [24], p. 8.

SSR 96-9p provides guidance on the requirement of a hand-held assistive device and provides that: "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing,

---

[7] Plaintiff also takes issue with the ALJ's characterization of his neurosurgeon access as being based on physical therapy noncompliance rather than insurance issues. [17], p. 13. Plaintiff construes Dr. Nowak's note that "[w]e sent multiple neurosurgeon referral[s] and he was not able to be seen by one yet" as unequivocally referring to insurance issues. *Id* (quoting R. 713). That does not seem to be inherently evident from Dr. Nowak's note; from this general comment, it seems equally as likely that Plaintiff has been unable to be seen by a neurosurgeon despite numerous referrals because he has not complied with physical therapy, which Dr. Nowak explicitly recorded at least twice as being a precondition to a neurosurgery visit. *See* R. 709, 711. Consequently, the ALJ did not mischaracterize the issue of neurosurgeon access as being related to physical therapy compliance. R. 21.

and describing the circumstances for which it is needed." SSR 96-9p. Plaintiff is unable to prove that a cane is a medically required device. Though Plaintiff cites to two of Dr. Nowak's treatment notes where she records Plaintiff's report that he "*[u]ses* cane for ambulation," Plaintiff ignores her social security evaluation form where she writes that he does not *require* a cane for ambulation. *Contrast* R. 709, 711 (emphasis added) *with* R. 409. In other words, though Plaintiff reported using a cane to Dr. Nowak, she evidently did not consider the cane a medical necessity (perhaps because she had not observed its use). As noted by other courts, "[t]hat an individual may use a cane does not necessarily warrant a corresponding RFC restriction. Rather, to justify a cane RFC restriction, the individual must show that a cane is a medical necessity and under which circumstances the cane is medically necessary." *Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at *12 (N.D. Ill. Dec. 19, 2019) (referencing *Petelle v. Berryhill,* No. 16 C 4208, 2017 WL 1208442, at *6 (N.D. Ill. Apr. 3, 2017)). Consequently, because the cane cannot be established as a medically required device due to insufficient medical documentation of its need, the ALJ did not err in omitting a cane limitation.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [17] is denied and the Commissioner's motion for summary judgment [24], is granted. The final decision of the Commissioner denying benefits is affirmed.

Date: 12/11/2023  ENTER:

_____
United States Magistrate Judge

10